# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

EMMACULATE REFLECTIONS, LLC,
and
KELLERMEYER BERGENSONS SERVICES, LLC

    Plaintiffs,

vs.

NABILA ALTMAN,

    Defendant.
_____/

CASE NO.:

## COMPLAINT

Plaintiffs, Emmaculate Reflections, LLC ("Emmaculate") and Kellermeyer Bergensons Services, LLC ("KBS"), through counsel, file their Complaint in this action and state as follows:

## NATURE OF THE CASE

1. This is a case for damages arising from violation of a non-compete agreement and for theft of trade secret information of Emmaculate and KBS through which they provide janitorial and cleaning services to clients in Florida and elsewhere. Defendant Nabila Altman ("Altman"), a former Emmaculate employee, has violated her valid and enforceable non-compete agreement with Emmaculate. Altman has also orchestrated theft of information when she obtained valuable protected information from Emmaculate through improper means in violation of the federal Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836 ("DTSA"), the Florida Uniform Trade Secret Act, Fla. Stat. §§ 688.001, et seq. ("FUTSA"), and in breach of certain restrictive covenants she entered into in connection with her employment with Emmaculate.

## PARTIES, JURISDICTION, AND VENUE

2. The amount in controversy exceeds $75,000, exclusive of interest, court costs, and attorneys' fees. As outlined below, this Court has jurisdiction over this matter by way of both federal question and diversity of citizenship.

3. Emmaculate was a Delaware Limited Liability Company authorized to do business in the state of Florida and had its principal place of business in Fort Lauderdale, Florida. Emmaculate conducted business in the janitorial and commercial cleaning industry throughout the United States and is now owned by and fully merged into KBS and it continues to conduct such business as part of KBS.

4. Specifically, Emmaculate Reflections, LLC, of which KBS is the only member, purchased the assets of RFJD Holding Co., Inc. dba Emmaculate Reflections by way of an Asset Purchase Agreement dated February 23, 2018. Through the Asset Purchase Agreement, Emmaculate Reflections, LLC acquired all of the assets of RFJD Holding Co. dba Emmaculate Reflections, including its contracts and employment agreements and its causes of action, including those asserted against the Defendant in this Complaint. Emmaculate Reflections, LLC then merged into KBS through an Agreement and Plan of Merger dated September 30, 2019. Through this merger, KBS became and it remains the successor in interest to all of the assets of Emmaculate, including the causes of action asserted against the Defendant herein. All members of Emmaculate and KBS reside in states other than Florida.

5. Altman is an individual residing in Lake County, Florida and working in Lake County, Florida.

6. Pursuant to 28 U.S.C. §1332, this Court has diversity jurisdiction to hear this case.

2

6158541v.1

7. Additionally, this Court has federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1331 under a misappropriation of trade secrets claim brought under the federal Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836(c). The Court has supplemental jurisdiction over claims arising under state law pursuant to 28 U.S.C. § 1367.

8. Venue is proper in this Court pursuant to 28 U.S.C. §1392 and 28 U.S.C. §89 because Altman resides in Lake County, Florida.

9. Emmaculate and KBS have satisfied all conditions precedent to the maintenance of this action.

## FACTUAL BACKGROUND

10. Altman began her employment with RFJD Holding Co. dba Emmaculate Reflections in 2012. During her approximate 7 year tenure with Emmaculate, Altman worked in the capacity of general sales and Director of Operations. In her position, Altman was responsible for driving new business revenue growth by identifying and attracting new clients. Altman was further responsible for building and maintaining current relationships with Emmaculate's clients by working with them on an ongoing basis to address various business related concerns.

11. On February 28, 2018, Altman entered into an Employee Agreement (titled "Offer of Employment") with Emmaculate (the "Employment Agreement"). A true and correct copy of the Employment Agreement is attached as **Exhibit 1**.

12. Altman's Employment Agreement contains restrictive covenants that preclude her from engaging in certain competitive activity for a period of two years following the conclusion of her employment. Specifically, paragraph 5 of the Employment Agreements states as follows:

Competitive Activities. As further inducement for the Company to make this offer of employment, you agree as follows:

3

(a) During the course of your employment with the Company, and for a period of 24 months after the date of termination of your employment with the Company:

    i. You shall not, and shall not permit any party acting on your behalf, in conjunction or association with you, or at your direction, to directly or indirectly, within a 100-mile radius of any facility in which you were employed by the Company, engage or invest in, own, manage, operate, develop, consult, finance, control or participate in any manner in the ownership, management, operation, financing, or control of, or lend money or credit to any business whose products, services or activities compete directly or indirectly, with the Company, including but not limited to, providing commercial janitorial, cleaning and maintenance services . . .

    iii. You shall not, and shall not permit any party acting on your behalf, in conjunction or association with you, or at your direction, to directly or indirectly, either for themselves or any other party, solicit the business of or contact engage in business with, any party known to you to be a customer or prospect list of the Company or any of its affiliates with respect to services or products that compete in any respect with the business of the Company or any of its affiliates.

13. Among other provisions, paragraph 4 of the Employment Agreement protects confidential information and trade secrets by prohibiting Altman from disclosing the confidential information and requiring Altman to return all confidential information at the conclusion of her employment. Specifically, paragraph 4 states as follows:

<u>Confidential Information</u>.

    a. During the course of your employment with the Company, you will have access to Confidential Information of the Company and its affiliates and their respective customers. "<u>Confidential Information</u>" is information which is not generally known to the public and, as a result, is of economic benefit to the Company, any of its affiliates, or any of their respective customers in the conduct of its business. You agree that Confidential Information shall include, but not limited to, all information developed and maintained by the Company, its affiliates and or their respective customers and compromising the following items, whether or not such items have been reduced to tangible form (e.g. physical writing): techniques, designs, drawings, processes, inventions, development, equipment, prototypes, methods . . . customer lists, pricing structures, business forms, marketing programs and plans, business plans and strategies . . . the identity of supplies and customers of the Company . . . Confidential Information includes not

only information belonging to the Company, its affiliates or any of their customers which existed before the dates of this Agreement but also information developed by the Employee for the Company, its affiliates or any of their customers during the term of your employment with the Company, and thereafter.

b. You shall not disclose to any third party or parties during or after the term of your employment with the Company, without the prior written consent of the Company, any information relating to the Company, its employees or customers, or information regarding the affairs or operations of the Company or any of its affiliates, including any Confidential Information. You agree that your use of Confidential Information is subject to the following restrictions during the term of your employment with the company and for an indefinite period thereafter so long as the Confidential Information has not become generally known to the public:

(ii) You will not use any Confidential Information to engage in competition with the Company or any of its affiliates at any time during the term of your employment with the Company or after the termination for any reason.

14. During her employment with Emmaculate, Altman came into possession of client lists, contact information, pricing information, client needs and products or services, and other sensitive information (collectively, the "Emmaculate Trade Secrets").

15. On May 24, 2019, Altman resigned her position with Emmaculate and gave a two-week notice. A true and correct copy of Altman's May 24, 2019 letter announcing her resignation is attached as **Exhibit 2**.

16. In early June 2019, Altman's employment relationship with Emmaculate ceased.

17. Shortly before her departure from Emmaculate, on May 28, 2019, Altman created a Florida Limited Liability named MCN Cleaning Services, LLC. Altman listed herself as the sole member of the company. MCN Cleaning Services, LLC's primary purpose is to perform "cleaning and maintenance."

18. MCN Cleaning Services, LLC's registered agent's address is: 11035 Avalon Ridge Way, Winter Garden, Florida 34787.

19. While still employed with Emmaculate, and immediately thereafter, Altman began using Emmaculate's confidential client information, pricing information, and trade secret information to solicit and convert Emmaculate's clients.

20. On September 17, 2019, Emmaculate issued a correspondence to Altman reminding her of her non-competition and confidentiality agreements ("Emmaculate Demand Letter"). A true and correct copy of the Emmaculate Demand Letter is attached hereto as **Exhibit 3**.

21. Despite the issuance of the Emmaculate Demand Letter, Altman continues to compete with Emmaculate. Additionally, Altman has continued to convert Emmaculate's customers and use Emmaculate's confidential information including pricing and contact information.

22. As a result of Altman's unlawful actions, Emmaculate has experienced damages in excess of $75,000. In addition, Altman has unjustly enriched herself at Emmaculate's expense and Emmaculate has been forced to incur legal expenses to enforce its rights.

23. While it is believed that Altman has recently dissolved MCN Cleaning Services, LLC, the conversion of Emmaculate's customers and information remains on going. Altman's LinkedIn page indicates that she continues to violate the terms of her non-compete agreement by conducting janitorial, cleaning, and maintenance services under other business names including "Altman & Altman" and "Altman." A true and correct copy of Altman's LinkedIn page is attached hereto as **Exhibit 4**.

24. As a result of Altman's unlawful actions, Emmaculate was required to hire the law firm of Constangy, Brooks, Smith & Prophete, LLP and is obligated to pay its lawyers a reasonable fee for their services.

## COUNT I
## BREACH OF NON-COMPETITION PROVISIONS IN
## EMPLOYMENT CONTRACT

25. Emmaculate and KBS reallege and incorporate by reference paragraphs 1 through 24 above as if set forth fully herein.

26. This is an action against Altman for breach of contract.

27. Altman breached the non-compete and non-solicitation provisions of the Employment Agreement by: (1) wrongfully taking, retaining and/or utilizing Emmaculate's confidential client information; (2) maintaining business relationships with Emmaculate's clients through MCN Cleaning Services, LLC, a company that directly competes with Emmaculate, or on her own through other unknown company names; and (3) soliciting Emmaculate's clients and employees.

28. The restrictive covenants contained in paragraph 5 of the Employment Agreement are reasonably necessary to protect Emmaculate's legitimate business interests.

29. Emmaculate has a legitimate business interest in its confidential, proprietary, and professional and/or trade secret information, its relationships with its clients and employees, and in the good will it developed with its clients and employees.

30. As a result of Altman's actions, Emmaculate has been damaged.

**WHEREFORE**, Emmaculate and KBS respectfully request that this Court enter judgment against Altman for: (1) compensatory damages associated with Altman's breaches of the Employment Agreement, together with pre- and post-judgment interest thereon; (2) attorneys' fees and costs; and (3) such other and further relief as may be just and proper.

## COUNT II
## BREACH OF CONFIDENTIALITY PROVISIONS IN
## EMPLOYMENT CONTRACT

31. Emmaculate and KBS reallege and incorporate by reference paragraphs 1 through 24 above as if set forth fully herein.

32. This is an action against Altman for Breach of the Employment Agreement.

33. Altman breached the confidentiality provisions in paragraph 4 of the Employment Agreement by wrongfully taking, retaining, and utilizing Emmaculate's confidential client information, pricing information, and other trade secrets and using them in connection with her employment with MCN Cleaning Services, LLC, or on her own, after her employment with Emmaculate ceased.

34. As a result of Altman's breach of the Employment Agreement, Emmaculate has been damaged.

35. The Employment Agreement allows for Emmaculate to recover its attorneys' fees incurred for bringing this action.

**WHEREFORE**, Emmaculate and KBS respectfully request that this Court enter judgment against Altman for: (1) compensatory damages, pre- and post-judgment interest, attorneys' fees and costs; and (2) such other and further relief as may be just and proper.

## COUNT III
## MISAPPROPRIATION OF TRADE SECRETS UNDER THE
## DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1836

36. Emmaculate and KBS reallege and incorporate by reference paragraphs 1 through 24 above as if set forth fully herein.

37. This is an action for an injunction and damages arising under the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836.

38. The Emmaculate Trade Secrets are subject to reasonable efforts to maintain their secrecy. They derive independent value from the fact that they are not publicly known or available, and are proprietary to Emmaculate.

39. Altman misappropriated the Emmaculate Trade Secrets in order to solicit Emmaculate clients and potential clients.

40. Emmaculate revealed the Emmaculate Trade Secrets to Altman subject to the restrictions contained in her Employment Agreement and with the expectation and understanding that Altman would safeguard them and would use them solely to provide services to Emmaculate's clients and to market Emmaculate's services to potential clients.

41. Altman knew that she was subject to the duty to maintain the secrecy and the limited use of the Emmaculate Trade Secrets.

42. Altman misappropriated the Emmaculate Trade Secrets by retaining them after she resigned from Emmaculate in order to compete with Emmaculate for client business and for purposes other than her employment with Emmaculate. Emmaculate has reason to believe that Altman has disclosed, and likely will continue to disclose the Emmaculate Trade Secrets in an effort to gain a competitive advantage over Emmaculate.

43. Altman's acts of misappropriation have caused injury to Emmaculate.

44. The Emmaculate Trade Secrets are related to products and services used in interstate commerce, as Emmaculate provides services and products to clients throughout the United States.

45. To the extent that Emmaculate can show actual loss and/or unjust enrichment caused by Altman's misappropriation of the Emmaculate Trade Secrets, Emmaculate seeks actual damages and damages for the unjust enrichment. Emmaculate is also entitled to exemplary

damages under the DTSA for Altman's willful and malicious misappropriation and use of the Emmaculate Trade Secrets.

46. Altman has also misappropriated Emmaculate's confidential pricing information and other data in order to convert Emmaculate's clients.

47. Altman willfully and maliciously misappropriated the Emmaculate Trade Secrets in an effort to steal Emmaculate's clients and convert them to clients of MCN Cleaning Services, LLC or personal clients of Altman under another business name.

48. Emmaculate is entitled to recover its attorneys' fees expended under the DTSA to redress Altman's willful and malicious misappropriation and use of Emmaculate's trade secrets.

**WHEREFORE**, Emmaculate and KBS respectfully request that this Court enter judgment against Altman for: (1) exemplary damages associated with Altman's willful and malicious misappropriation of Emmaculate's trade secrets; (2) compensatory damages in the form of Emmaculate's lost profits and/or the amount by which Altman has unjustly enriched herself; (3) attorneys' fees and costs; and (4) such other and further relief as may be just and proper.

## <u>COUNT IV</u>
## MISAPPROPRIATION OF TRADE SECRETS UNDER FLORIDA STATUTE §688.001

49. Emmaculate and KBS reallege and incorporate by reference paragraphs 1 through 24 above as if set forth fully herein.

50. This is an action against Altman for misappropriation of the Emmaculate Trade Secrets.

51. Emmaculate's client information, including client contact information and confidential information, constitutes a trade secret under Florida law.

52. Emmaculate's sensitive insurance pricing information and other insurance data also constitutes a trade secret under Florida law.

53. Specifically, Emmaculate's information is not generally known to third parties and Emmaculate takes reasonable precautions to maintain the secrecy of this information, such as the agreement attached hereto as Exhibit 1.

54. Altman misappropriated Emmaculate's confidential client information, including client contact information.

55. Altman has also misappropriated Emmaculate's confidential pricing information and other data in order to convert Emmaculate's clients.

56. Altman willfully and maliciously misappropriated the Emmaculate Trade Secrets in an effort to steal Emmaculate's clients and convert them to clients of MCN Cleaning Services, LLC or personal clients of Altman under another business name.

57. After her employment with Emmaculate, Altman used the Emmaculate Trade Secrets to convert Emmaculate's clients and the profits associated with said clients for her personal use.

58. As a result of Altman's willful and malicious misappropriation of the Emmaculate Trade Secrets, Emmaculate has been damaged.

**WHEREFORE**, Emmaculate and KBS respectfully request that this Court enter judgment against Altman for: (1) exemplary damages associated with Altman's willful and malicious misappropriation of Emmaculate's trade secrets; (2) compensatory damages in the form of Emmaculate's lost profits and/or the amount by which Altman has unjustly enriched herself; (3) attorneys' fees and costs; and (4) such other and further relief as may be just and proper.

6158541v.1

## COUNT V
## TORTIOUS INTERFERENCE WITH ADVANTAGEOUS
## BUSINESS RELATIONSHIPS

59. Emmaculate and KBS reallege and incorporate by reference paragraphs 1 through 24 above as if set forth fully herein.

60. This is an action against Altman for tortious interference with advantageous business relationships.

61. Emmaculate had an advantageous business relationship with its clients.

62. Altman knew of the advantageous business relationships between Emmaculate and its clients.

63. As described above, Altman's use of improper means and Emmaculate's confidential information intentionally and unjustifiably interfered with the business relationships between Emmaculate and its clients.

64. As a result of Altman's tortious interference, Emmaculate has been damaged.

**WHEREFORE**, Emmaculate and KBS respectfully request that this Court enter judgment against Altman for compensatory damages, pre- and post-judgment interest, court costs and such other and further relief as is just and proper.

## COUNT VI
## INJUNCTIVE RELIEF

65. This is an action for injunctive relief, to enjoin Altman from engaging in any continuation of violating the terms of the Employment Agreement.

66. Emmaculate and KBS reincorporate by reference the allegations contained in paragraphs 1 through 24 above as though fully set forth herein.

67. Altman is currently in breach of the non-competition and confidentiality provisions of her Employment Agreement.

68. Emmaculate has invested substantially in the development of its customers, employees, confidential information, and other resources. Emmaculate has further developed an enormous amount of goodwill with its customers in its United States markets. Substantial relationships of this kind, associated with a particular geographic location or marketing area are legitimate business interests justifying a restrictive covenant.

69. It is long recognized that business relationship with customers and goodwill in the community are legitimate business interests worthy of protection. *Akey v. Murphy*, 238 So. 2d 94, 96 (Fla. 1970) (goodwill is a reasonable interest sufficient to support a covenant not to compete and transfer of goodwill is implied in connection with the withdrawal of a partner from a medical business); *Karlin v. Weinberg*, 390 A. 2d 1161, 1166 (N.J. 1978) (employers have a legitimate interest in protection of Customer relationships); *Weber v. Tillman*, 913 P.2d 84, 92 (Kan. 1996) (recognizing that goodwill developed over years of business activities is a recognized protectable interest that a former employee should not be allowed to misappropriate); *Cogley Clinic v. Martini*, 112 N.W.2d 679, 681-682 (Iowa 1962) (finding restriction reasonably justified to protect business activities' goodwill even where employer failed to show an exodus of Customers since the opening of competing business's new office); *Canfield v. Spear*, 254 N.W.2d 433 (HI. 1969) (restrictive covenant was reasonable and health clinic had protectable interest in patients even though clinic had not yet obtained a replacement dermatologist). Emmaculate's and KBS' business is no different for purposes of protecting it from the actions of Altman.

70. In addition to Emmaculate's legitimate interest in its customer base, human resources, and goodwill, Emmaculate has a legitimate business interest in protecting the confidential information. Altman executed her Employment Agreement in favor of Emmaculate as a condition to her employment. Emmaculate has a legitimate business interest in protecting its

initial investment in the confidential information that is within Altman's business knowledge at this time.

71. The heart of all enforceable covenants not to compete is the aim of preventing unfair competition or unjust enrichment at the employer's expense. Emmaculate also has a legitimate business interest in protecting its financial interests and other relationships that depend on the non-compete provisions among the employees. Emmaculate has a legitimate business interest in the continued success of its business activities, which is dependent upon the enforcement of the non-competition/non-solicitation agreements among all of its present and applicable former employees.

72. When Emmaculate commits to its employees, these employees receive numerous benefits from Emmaculate. But without the protection of the Employment Agreement, Emmaculate has no protection against its employees leaving once they have used Emmaculate's resources to build their business activities. Such an appropriation of Emmaculate's assets is clearly unfair competition and justifies its restrictive covenant.

73. The duration of the Employment Agreement is extremely reasonable given the length of time it may take Emmaculate to reconstitute the team of employees to service its customers. Furthermore, the duration of the Employment Agreement is a reasonable amount of time for Emmaculate to attempt to retain its customer base using its existing employees, while at the same time introducing new employees to the community.

74. As set out above, the damages Emmaculate will suffer if the Employment Agreement is not enforced are incalculable and include intangible losses such as loss of goodwill and referral sources. Furthermore, the effect of the failure to enforce the Employment Agreement

is incalculable. The damages stemming from the breach of the Employment Agreement do not provide Emmaculate with an adequate remedy at law because a money judgment is not sufficient.

75. Furthermore, the same reasons that justify an assumption of irreparable injury upon establishing an enforceable restrictive covenant normally make it clear that money damages, even if capable of being proved, cannot compensate an employer for all aspects of such a violation. The loss of goodwill does not simply stem from the loss of a few of the customers or employees, but from the invasion of Emmaculate's corporate privacy, and the convenient taking of referral source information and confidential information that have required many years for Emmaculate to develop.

76. Altman is now in direct competition with Emmaculate and its remaining employees. Altman has attempted to arrogate customers, confidential information, and other resources of Emmaculate. Altman has attempted to transfer existing customers, confidential information, and other resources at the unfair expense of Emmaculate.

77. Emmaculate depends upon its customers, confidential information, and other resources for the continued success of its business activities. Emmaculate has long standing relationships with its customers within this district, throughout Florida, and the United States. Emmaculate is entitled to protect its relationships within these areas.

78. As a result of Altman's conduct, Emmaculate has been harmed and believes itself to be at risk in business, financial, and legal terms unless judicial intervention is forthcoming.

79. Unless Altman's conduct ceases, Emmaculate will continue to suffer irreparable harm.

80. With respect to Altman's conduct, Emmaculate lacks an adequate remedy at law.

6158541v.1

81. In particular, but without limitation, Altman should be enjoined from the following activities wherever prohibited:

    a. Altman must be enjoined from using any confidential information derived from her tenure at Emmaculate;

    b. Altman must be enjoined from possessing records of Emmaculate that constitute confidential information, including client lists and contact information, of Emmaculate;

    c. Altman must be enjoined from competing with Emmaculate;

    d. Altman must be enjoined from soliciting Emmaculate's customers and employees;

    e. Altman must be enjoined from otherwise breaching her Employment Agreement.

**WHEREFORE**, Emmaculate and KBS request injunctive relief regarding all misconduct by Altman in their favor and against Altman, consistent with all of the foregoing, and all other appropriate relief.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, Emmaculate Reflections, LLC and Kellermeyer Bergensons Services, LLC, requests that this Court:

(1) Order Altman to disgorge all revenues obtained from Emmaculate clients converted to Altman through her employment through MCN Cleaning Services, LLC or any other entity that Altman has worked with or for since her departure.

(2) Award Emmaculate and KBS their actual damages for injuries suffered as a result of Altman's misconduct;

16
6158541v.1

(3) Award Emmaculate and KBS damages for unjust enrichment caused by Altman's misappropriation and unlawful use of Emmaculate's trade secrets;

(4) Enter an Injunction regarding Altman's further violation of the Employment Agreement and competitive activities;

(5) Award exemplary damages for Altman's willful and malicious actions;

(6) Award attorneys' fees and costs of suit; and

(7) Grant such other and further relief as this Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiffs Demand Trial by Jury for all forms of relief triable by a jury.

Dated: November 22, 2019

/s/Phillip J. Harris
Phillip J. Harris, Fla. Bar. No. 0044107
pharris@constangy.com
CONSTANGY, BROOKS, SMITH & PROPHETE, LLP
100 North Tampa Street, Suite 3350
Post Office Box 1840
Tampa, Florida 33601-1840
(813) 223-7166 / Fax: (813) 223-2515